Good morning, your honors. I'm Eric Kettglass. I'm attorney for the appellant, Obama de Santiago. I would like to reserve like five minutes for reply. You want five minutes? Yes. Okay. And PREPA is the sole provider of 1.5 million citizens and residents of Puerto Rico. The energy cost in Puerto Rico is like three times the cost nationwide. And we have filed a complaint where we allege that the reason for this is because of certain surcharges that are imposed by law that constitute a taking under the Constitution in part for private use and as a whole as a regulatory taking. And we also have alleged that the system does not provide a procedure to request compensation for those takings. You know, at some point, I would like to be convinced that you have standing in this case. The standing issue, the claimants are victims of this system. It's just like taxpayers and taxpayer suits. So seeing that wasn't raised, I believe, we believe we do, but we can address it. The question of standing should be raised by the court. Okay. But we will address it. We believe we have standing. And because the way it's raised, we're not arguing a regulatory issue. We're not arguing a tariff issue. The way this is presented is that we're arguing a deprivation of property, the property of the clients. So in other words, the way to present it is like what we're saying is not that the tariff is unfair or they're paying too high. What is the property that's taken from you here? The property is the electricity. On the Puerto Rico law, electricity is a mobile property, a shuttle. And what we're saying is, for example, if you go to a store and you pay for 10 pieces of hardware, you should get the 10 pieces. What we're saying here is we got seven or 11% is missing of what we paid for. Basically, that's the way it's being presented. And that's one of the main issues on appeal. I'm sorry. I'll take my question. Go ahead. Yes. I just want to try to understand the definition a little bit here. Yes. The cost of electricity to the end user is about 27 cents per kilowatt hour. That's correct, sir. And so the end user, your client, paid 27 cents per kilowatt hour and got the number of kilowatt hours that would relate to the 27 cents per hour. So what I don't understand is what part of that electricity was then taken away from him? Well, again, if you see it in that way, it would be a regulatory issue. What we're saying is he was entitled to receive not the rate, the whole what he paid, which should not include the 11%. Basically, that's the argument. And the reason why, if I may, if you allow me to go a little bit further. Are you saying he should have gotten 11% more electricity for 27 cents per hour? Well, deducted from the price, the way it goes around. But it does indirectly affect the rate for sure. Yes. But the argument is. You say deducted from the price. But your claim, at least as you're stating it this morning, is that he had electricity taken away from him. That's correct. That is the way. How can you say that's correct when you're also saying he got every bit of electricity, but he was charged too much for it? Isn't your claim one about the cost of the electricity as opposed to deprivation of electricity itself? Well, the deprivation of electricity in the manner that that cost is determined. I don't understand your answer. Are you saying that those are the same thing? Can you ask the question and answer? I said you've just answered the question about whether you're being deprived of electricity. And the answer to that is no. You are asserting that you should have paid less for the electricity that you were provided. What we're saying is we should have gotten more electricity than what we got for the price that we paid. Okay. So this is a case about the pricing of the electricity. That's not the way it was presented, but that's the way it's being considered by the court. And if we go in that direction, then we'll deal with the regulatory aspect of the issue. You know, that takes you right back to Judge Torea's standing question, it seems to me. If a utility in the position of PREPA has discretion to set rates, then you do not have a deprivation of the property of electricity. You're just talking about whether you were charged the right amount. That deals with the first issue. It doesn't address the second issue, the regulatory taking, which then that, we respectfully believe, deals with the fact of whether the regulations and the way they're built constitute a taking because of the- What is the protected property interest that you say is being taken under this regulatory framework? The same thing that- You're saying electricity again? Yeah. Okay. Go ahead. Basically, Your Honor, that's one of the main issues in the case. The way we have been presented, again, is that- No, I'm sorry. I want you to go ahead and explain to me how that can be so. This is something I- Conceptually, I don't understand. You say electricity is taken away from you. Is that what you're saying? Yes. Well, I mean, your clients have, say, a refrigerator. Yes. And the refrigerator is working full blast anyway. You're just saying that because of what they're doing, you're being charged more for the electricity you are receiving. Nothing is being taken from you. Well, what we're saying is that the electricity that we bought was not completely received in part because it was given to other people. For example, in the private taking issue, what we're saying is that we were entitled to receive a sum of electricity for what we're paying, but in violation of the law, the PREPA is providing that electricity to the municipalities without any legitimate public purpose, for example. May I? Apparently, at some point under Puerto Rican law, the municipalities received 14% subsidy, if you will, in lieu of payment of property taxes. Correct. And this is of concern to you. Yes. You believe that that 14%, which went to the municipalities, was used by the municipalities to assist private people. Correct. And you believe that it's a violation of due process to charge you the rates you are charged for electricity when, in fact, it ends up, in your view, in the hands of private people. That's another argument, yes. Okay. And do you characterize that as a takings claim or as a due process? No. That would be a procedural due process issue because under the Puerto Rican law, they're prohibited from doing that. Okay. That was my second question. I understood Puerto Rican law had changed and now municipalities may not do what they did in the past. That was since 2011, but they have kept doing it. That's the argument, that notwithstanding, it's contrary to the law. They have been doing that and we're claiming a due process violation. Why are you in federal court and not state court on that claim? There was a constitutional issue raised as to the other issues, so they're all together. A violation of state law does not itself raise a constitutional issue. That's correct. You're aware of that. Sure, yes, because we have the takings constitutional issue, so that's another claim. So this is what, a pendant state issue? Yes, yes. All right. So let's go back to the takings claim because we're having trouble seeing what it is. Sure. Okay. Would you like to add anything more? Again, it depends the way it's seen. You can see it in one way that you've been overcharged. The only way we're seeing less than what we paid for. No, no, no, no. It doesn't matter whether you were overcharged or not. A pricing claim is not in and of itself a takings claim. We understand. We're trying to, the argument is that it's not an overcharged issue. It's that the people are being given less than what they paid for. And because of the way the system works. Being less than what they were paid for. Yes. Don't you lose any interest in that money once you pay it, according to several cases? No, no, Your Honor. No? How about Koontz? Koontz v. St. John's River Water Management District. Doesn't it say that you lose? But I'm saying, no, I agree that you don't have any proprietary interest in the money. I agree with that. I agree with the proposition. Well, once you pay that money, then you have to. The money is not yours. What I'm saying is we're entitled to receive more at the time we pay. The way we perceive it, again, you go to the hardware store, you know, you pay for ten pieces of something, and you get 11% less than you paid. And why? Because those 11 cents are being given to other people or entities. So maybe you've got a state law consumer protection claim, but you don't have a takings claim. Sounds to me like you have a political claim, and you're in the wrong forum. That's correct. Political issue is not for you. You've reserved some time. Thank you. Good morning, Your Honors. For the record, my name is Fernando Fornades, and I represent the Puerto Rico Electrical Power Authority in this case. I am pleased to report. Your Honor, upon listening to the arguments set forth by Provost Counsel Keglas, we have had the same concern that the Court has expressed to the effect that we have searched high and low for some authority that would provide him with whether electric power in itself is a protected property interest. And we have found that. It gets a little complicated. First, did you raise a standing issue? No, we did not. But you did make the argument that there is no property interest that's involved here. That is correct, Your Honor. We did follow the, to our best opinion, we followed Judge, Magistrate Judge Carreño's holding, which we feel it deals with all the issues that were brought up before her. That holding makes me a little nervous because there is some case law out there that electricity is one of the essentials of life, and you shouldn't cut off poor people who claim that they have actually paid for the electricity without giving them some sort of due process. And in that context, the right to receive electricity is considered to be something like property. And so I get nervous about rulings like that. And I totally understand. I think Judge Carreño in her report on recommendation, which was eventually adopted by the district court in his judgment. I know, but these are all de novo issues. I understand, Your Honor. But we are totally in agreement that electric power is a utility which is highly needed, and it has been recognized that there is a constitutional right to the continuance of the service. Okay, so what's different about this case? I beg your pardon? What is different about this case? Is it that they're not being deprived of electric power? They're just complaining about how much it costs them? That is precisely what they are. They're not happy what they're being charged. The historical thing about this case, Your Honor, is that, first of all, that $0.27 kilowatt hour is no longer real. At that particular moment in time, the oil barrel was, that was in 2011, 12, 13. The oil rocketed to $120 a barrel. And since we run our energy on oil, then obviously your invoice is going to be increased. But the truth of the matter, and as I read what plaintiffs are saying, is that for some unknown reason they believe that the authority is giving away their power to somebody else. And they're getting the power that they are paying for. Nobody in Puerto Rico gets free power, free service. No one, anybody who is hooked up to the grid gets paid. There are subsidies that are legislated because there is an interest of the state to deal with poor people, for example, who, unfortunately, I don't agree with them that they live in cesspools because the public housing in Puerto Rico are not cesspools. And they deserve to be assisted in their getting a decent way of life. So there is no such thing as free energy in Puerto Rico. Everybody pays. But there are subsidies which are legislated. And I take it your position is if he has a problem with the state subsidy, he should go talk to the state courts about it as opposed to federal court? I would agree with that 100 percent, Your Honor. Can you describe the subsidy that they are complaining about and whether it, in fact, is still in existence? Well, the main complaint that they have is that this contribution in those taxes. And this is not a free service. I mean, there is a quid pro quo with the municipalities of which Plaintiff is a resident whereby there is an exchange of services, if you may. That's how they collect from the municipalities. But to say that they're giving this for free, that's not true. And as Judge Carreno very well put it, they have not even tried to establish the heavy burden of saying that this is not a valid state interest. Have studies been done, for example, in the legislative records with respect to these amendments? Are there any studies to indicate the proportionality of the CILT to lost tax revenue based on the rates that are ordinarily applied to commercial properties in the various municipalities? Well, there could be. But to get into the wisdom of how the legislature- I just want to know if there are public records. And I know. And you could take judicial notice. Right now there is a whole restructuring of the Electric Power Authority. There is a law 4 that was enacted maybe two weeks ago. And the Electric Power Authority is undergoing a complete restructuring precisely because- and there is something that you have to be- Do you mind if I ask my question again so I can get an answer to it? Do you know whether there are studies on the proportionality of the CILT as it relates to lost revenues on property taxes? I do not know. Okay. That's all I was asking. Okay. But you should be- Excuse me. You don't know. But before the district court, was there any evidence put in as to the reason the Commonwealth chose the CILT process? There was no evidence that I may recall. It should be clear and made clear that this 11% that has been raised once again by plaintiffs, this has been there since 1941 when the organic law to establish the Puerto Rico Electric Power Authority was enacted. But as time goes on, you add more costs. The costs keep coming up. And that's what this 11% deals with. So if you have more subsidies and you have- This is where us, as the only revenue that the Electric Power Authority has, this is where it all goes. But we get what we pay for. I mean, there is no due process violations. Everybody pays for it and everybody gets what they are entitled to. That's as simple as that. Can I ask you a question? It's my understanding that there is not a separate rate setting commission in Puerto Rico. PREPA has the discretion to set the rates. Is that accurate? Or is there a separate commission that PREPA has to get its rates approved by? There is no separate commission. And PREPA does have a governing board before which it deals with the changes in rates. And, yes, it does have a governing board. And now there is an independent electric commission that will be dealing with that under the new law. So in general terms and what I feel that, and as this court has hinted, plaintiffs in this case are representing a class which is, and understandably so, and precisely when this complaint was filed back in 2011, that they are not happy. They are not happy with the amount they pay and they are not happy with how the authority makes its payments. And those payments are pursuant to law. These are not arbitrary. They are not capricious. It's a mandate from the Puerto Rico legislature. In 2011, when they filed this lawsuit, in the years up to that, was it up to PREPA to set the rates or was there an independent commission? You say now there is an independent commission. It was up to PREPA to set the rates pursuant to a clause, which was part of the facts that are not in controversy, which as a matter of fact, plaintiffs admitted all of the facts that are not in controversy that were submitted before the court with our summary judgment. And that particular equation is there and that's what it is used. It's not an arbitrary exercise. It has to be regulated by using that particular clause. So if there is any other questions, that will be it. Thank you. Thanks. Just briefly, it's not that we're not happy with what we've been paying. What we're saying is that the amount that is being billed cannot be paid. And it creates an insurmountable burden for most people in the island. It might be a political issue, but we do believe there are some issues involved that deserve constitutional review. The way that, I mean, this burden is so high that people are closing businesses, they're leaving the island, and the political are not doing anything. And then we have the issue that it's not true that people are not getting things for free. The municipalities are getting a credit for free because they're billing other people for that. And we're all paying for that. And again, when we go back again to the issue of the whole regulatory process, we do believe that there is a proprietary interest involved because in the end, people are being deprived of their electric power, which is a movable property in the Puerto Rico. And if we go through the factors set in Penn State in those cases, you know, the impact is there. The impact of this law in Puerto Rico is about $360 million a year. And the burden is so high that people can no longer do business in the island. They're closing the business. They're leaving. And something needs to be done if it can be done from the constitutional way. And we just submit that to the court to have it in mind when it reviews these matters. Thank you. Thank you. Thank you.